PHILLIP A. TALBERT
United States Attorney
AUDREY B. HEMESATH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:18-cr-109 TLN |
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE:   JUNE 2, 2022<br>TIME:   9:00 A.M.<br>COURT:  Hon. TROY L. NUNLEY |
| JEFFREY KIM, | |
| Defendant. | |

## I.   **INTRODUCTION**

A.   **Scope of Agreement.**

The indictment in this case charges the defendant with violation(s) of 18 U.S.C. §§ 1344, 1543 1956(a)(1)(A)(i), and 1028A(a)(1)(A). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

B.   **Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances

PLEA AGREEMENT                                    1

concerning the criminal activities of defendant, including activities which may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II.   DEFENDANT'S OBLIGATIONS

### A.   Guilty Plea.

The defendant will plead guilty to count four, bank fraud, in violation of 18 U.S.C. § 1344, and count seven, aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1)(A). The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B.   Restitution.

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims

PLEA AGREEMENT                                    2

affected by this offense, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's conduct for the offenses charged from the periods February 1, 2017 through July 24, 2017.  The amount of restitution will be between $196,058 and $300,000.

Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court.  Defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

**C.**   **Fine.**

The defendant reserves the right to argue to Probation and at sentencing that he is unable to pay a fine, and that no fine should be imposed.  The defendant understands that it is his burden to affirmatively prove that he is unable to pay a fine, and agrees to provide a financial statement under penalty of perjury to the Probation Officer and the government in advance of the issuance of the draft Presentence Investigation Report, along with supporting documentation.  The government retains the right to oppose the waiver of a fine.  If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offense[s].

**D.**   **Special Assessment.**

The defendant agrees to pay a special assessment of $200 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.  The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.  If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**E.**   **Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

If the defendant, cooperating or not, violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government.  If the government elects to void the agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution

PLEA AGREEMENT                                        3

1   and sentencing as set forth herein.  A defendant violates the plea agreement by committing any crime or

2   providing or procuring any statement or testimony which is knowingly false, misleading, or materially

3   incomplete in any litigation or sentencing process in this case, or engages in any post-plea conduct

4   constituting obstruction of justice.  The government also shall have the right (1) to prosecute the

5   defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be

6   dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be

7   barred by this plea agreement.  The defendant shall thereafter be subject to prosecution for any federal

8   criminal violation of which the government has knowledge.  The decision to pursue any or all of these

9   options is solely in the discretion of the United States Attorney's Office.

10          By signing this plea agreement, the defendant agrees to waive any objections, motions, and

11   defenses that the defendant might have to the government's decision.  Any prosecutions that are not

12   time-barred by the applicable statute of limitations as of the date of this plea agreement may be

13   commenced in accordance with this paragraph, notwithstanding the expiration of the statute of

14   limitations between the signing of this plea agreement and the commencement of any such prosecutions.

15   The defendant agrees not to raise any objections based on the passage of time with respect to such

16   counts including, but not limited to, any statutes of limitation or any objections based on the Speedy

17   Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as

18   of the date of this plea agreement.  The determination of whether the defendant has violated the plea

19   agreement will be under a probable cause standard.

20          In addition, (1) all statements made by the defendant to the government or other designated law

21   enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,

22   whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or

23   administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

24   claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal

25   Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by

26   the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

27   By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

28

PLEA AGREEMENT                                    4

**F.  Forfeiture.**

The defendant agrees to forfeit to the United States voluntarily and immediately all of his right title and interest to any and all assets subject to forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A). The defendant stipulates and agrees that as part of his sentence the Court may, pursuant to Fed. R. Crim. P. 32.2(b), order a forfeiture money judgment in an amount up to $196,058.

The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of assets. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions.

The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

**G.  Asset Disclosure.**

The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within ten weeks from the entry of the defendant's change of plea, including supporting documentation. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that if he fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time, he will be considered in violation of the agreement, and the government shall be entitled to the remedies set forth in section II.E above, above.

### III.  THE GOVERNMENT'S OBLIGATIONS

**A.  Dismissals/Other Charges.**

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein.

PLEA AGREEMENT                                                5

**B.** <u>Recommendations.</u>

    1.    Incarceration Range.

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range, plus the application of the mandatory statutory minimum term, as determined by the Court.

    2.    Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**C.**    <u>Use of Information for Sentencing.</u>

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.    <u>ELEMENTS OF THE OFFENSE</u>

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense(s) to which the defendant is pleading guilty:

**18 U.S.C. § 1344(1)**

(1) the defendant knowingly executed a scheme to defraud a bank as to a material matter;

(2) the defendant did so with the intent to defraud a bank; and

(3) the bank was a financial institution.

**18 U.S.C. § 1028A(a)(1)**

(1) the defendant knowingly directed another person in the scheme to use without legal authority

1       a means of identification of another person;

2       (2) the defendant knew that the means of identification belonged to a real person; and

3       (3) the defendant did so during and in relation to bank fraud.

4       The defendant fully understands the nature and elements of the crimes charged in the indictment

5  to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with

6  his attorney.

7       **V.**     **MAXIMUM SENTENCE**

8       **A.**     **Maximum Penalty.**

9       The maximum sentence that the Court can impose for bank fraud is 30 years of incarceration, a

10  fine of $1,000,000, a 5 year period of supervised release and a special assessment of $100.  The

11  mandatory sentence the Court must impose for aggravated identity theft is a consecutive 2 year term of

12  imprisonment; in addition, the Court may impose up to a $250,000 fine, and a one year term of

13  supervised release, and a $100 special assessment.

14       By signing this plea agreement, the defendant also agrees that the Court can order the payment of

15  restitution for the full loss caused by the defendant's wrongful conduct.  The defendant agrees that the

16  restitution order is not restricted to the amounts alleged in the specific count(s) to which he is pleading

17  guilty.  The defendant further agrees, as noted above, that he will not attempt to discharge in any present

18  or future bankruptcy proceeding any restitution imposed by the Court.

19       **B.**     **Violations of Supervised Release.**

20       The defendant understands that if he violates a condition of supervised release at any time during

21  the term of supervised release, the Court may revoke the term of supervised release and require the

22  defendant to serve up to an additional three year term of imprisonment.

23       **VI.**     **SENTENCING DETERMINATION**

24       **A.**     **Statutory Authority.**

25       The defendant understands that the Court must consult the Federal Sentencing Guidelines and

26  must take them into account when determining a final sentence.  The defendant understands that the

27  Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the

28  Sentencing Guidelines and must take them into account when determining a final sentence.  The

PLEA AGREEMENT      7

1  defendant further understands that the Court will consider whether there is a basis for departure from the

2  guideline sentencing range (either above or below the guideline sentencing range) because there exists

3  an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into

4  consideration by the Sentencing Commission in formulating the Guidelines.  The defendant further

5  understands that the Court, after consultation and consideration of the Sentencing Guidelines, must

6  impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

7        **B.    Estimated Guideline Calculation.**

8        The government and the defendant agree that the following is their present best estimate of the

9  sentencing guidelines variables.  These estimates shall not be binding on the Court, the Probation Office,

10 or the parties:

11              1.    Base Offense Level: +7 (U.S.S.G. § 2B1.1)

12              2.    Loss Amount: + 12 ($380,429 intended loss)

13              3.    Means of Identification: +2 (U.S.S.G. §2B1.1(b)(11)).  The government's
       position is that this enhancement applies because the offense involved Kim's possession
14             and use of five or more means of identification that unlawfully were produced from
       another means of identification.  Kim reserves the right to argue at sentencing that this
15             enhancement does not apply.

16              4.    Adjusted Offense Level: 19 or 21 (30-37 months or 37-46 months), plus 24
       months consecutive

17              5.    Acceptance of Responsibility: See paragraph III.B.2 above

18 Departures or Other Enhancements or Reductions:

19        The parties agree that they will not seek or argue in support of any other specific offense

20 characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"),

21 or cross-references, except that the government may move for a downward departure.

22        The defendant may argue for any sentence he deems appropriate under 18 U.S.C. § 3553.  The

23 defendant acknowledges that if the defendant requests or suggests in any manner a different sentence

24 than what is called for under the advisory guideline range as determined by the Court, that will be

25 considered a violation of the plea agreement. The government's remedies and remaining obligations in

26 this agreement shall be as outlined in paragraph II.E, above.

27

28

PLEA AGREEMENT                                      8

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights.

The defendant understands that by pleading guilty he is waiving the following constitutional rights:  (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.   Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence.  The defendant agrees as part of his plea(s), however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximum(s) for the offense(s) to which he is pleading guilty.  The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty.  The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding the government's agreements in paragraph III.A above, if the defendant ever attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in Section II.E herein.

### C.   Impact of Plea on Defendant's Immigration Status.

Defendant recognizes that pleading guilty may have consequences with respect to his

PLEA AGREEMENT

9

1   immigration status if he is not a citizen of the United States.  Under federal law, a broad range of crimes
2   are removable offenses, including offense(s) to which the defendant is pleading guilty.  Removal and
3   other immigration consequences are the subject of a separate proceeding, however, and defendant
4   understands that no one, including his attorney or the district court, can predict to a certainty the effect
5   of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty
6   regardless of any immigration consequences that his plea may entail, even if the consequence is his
7   automatic removal from the United States.

8                          VIII.     **ENTIRE PLEA AGREEMENT**

9          Other than this plea agreement, no agreement, understanding, promise, or condition between the
10  government and the defendant exists unless it is committed to writing and signed by the defendant,
11  counsel for the defendant, and counsel for the United States.

12                        IX.      **APPROVALS AND SIGNATURES**

13      **A.      Defense Counsel.**

14         I have read this plea agreement and have discussed it fully with my client.  The plea agreement
15  accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to
16  plead guilty as set forth in this plea agreement.

17  Dated:   6/23/2022

18                                             NOA OREN
                                               Attorney for Defendant

19

20

21      **B.      Defendant:**

22         I have read this plea agreement and carefully reviewed every part of it with my attorney.  I
23  understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully
24  understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my
25  case.  No other promises or inducements have been made to me, other than those contained in this plea
26  agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.

27

28

PLEA AGREEMENT                                  10

1  Finally, I am satisfied with the representation of my attorney in this case.

2  Dated: 6/23/2022

3  JEFFREY KIM
   Defendant

4

5  **C.     Court Interpreter/Translator:**

   I declare that I am a court Korean-English interpreter/translator. On June 23, 2022 , I read

6  the entire contents of the foregoing plea agreement, including the factual basis, to Jeffrey Kim,

7  translating the document from English to Korean.

8  Dated: June 27, 2022

9

10 Jacki J. Noh, Certified Court Interpreter        Interpreter/Translator
   (Certification # 300150)

11

12

13 **D.     Attorney for United States:**

   I accept and agree to this plea agreement on behalf of the government.

14

15 Dated:                                          PHILLIP A. TALBERT
                                                   United States Attorney

16

17                                                 AUDREY B. HEMESATH
                                                   Assistant United States Attorney

18

19

20

21

22

23

24

25

26

27

28

PLEA AGREEMENT                          11

1   EXHIBIT "A"

2   Factual Basis for Plea(s)

3       Between on or about February 1, 2017 and July 24, 2017, Jeffrey Kim was a participant in a nationwide bank account "bust out" scheme centered on kiting checks for the purpose of obtaining cash
4   from financial institutions. The scheme generally operated through the use of participants in the scheme obtaining a real Republic of Korea passport that was altered on the identification page to bear a new
5   photograph and name. With the altered Republic of Korea passports, participants opened accounts at financial institutions, using a small amount of cash. The accounts were left dormant to age. Knowing
6   that banks typically allowed a holder of an aged account to deposit a check and make withdrawals against that check before the check actually cleared, participants in the scheme would obtain cash from
7   the bank by using non-sufficient checks drawn on another financial institution. To promote the bank fraud scheme, participants would access the funds in a victim bank account via the purchase of a money
8   order. Participants would then deposit the money order into another bank account associated with the scheme for purposes of freshening the bank account.

9       As part of the bank fraud scheme, on or about February 16, 2017, a participant in the scheme
10  opened a source account at a BMO Harris branch account in Arizona, using a falsified Korean passport. Thirty-six checks were written against this account, all of which eventually bounced. A participant in
11  the scheme opened a Wells Fargo checking account in Arizona, using a different falsified Korean passport. KIM participated in the bust-out of this account. On seven occasions between May 25, 2017
12  and May 26, 2017, KIM deposited non-sufficient funds checks written out of the BMO Harris checking account at branch locations of the Wells Fargo account in Orangevale, Roseville, and Sacramento. KIM
13  then made cash withdrawals of between $800 and $1,900, or requested cash back in a similar amount
14  with the deposit of the non-sufficient funds check.

15      Also on or about May 26, 2017, KIM purchased a postal money order for $995 from a post office
16  in Carmichael. KIM purchased the money order using a debit card connected to one of Wells Fargo bust-out accounts. On or about May 29, 2017, a participant in the scheme deposited the money order
17  into a different Wells Fargo account. The funds from the money order were used to age or freshen that bank account and giving it the appearance of a bank account used for legitimate purposes until that bank
18  account was eventually busted out as part of the scheme.

19      On or about May 24, 2017, another participant in the scheme, Kyung Min Kong provided to KIM a fraudulent Republic of Korea passport in the name of Person 5 for the purpose of opening (1) a
20  private mail box in Granite Bay, California, in the State and Eastern District of California; and (2) a bank account at the El Dorado Savings Bank in Folsom, California. The Republic of Korea passport
21  contained a picture of KIM, the name of Person 5, and was made for the purpose of opening bank accounts in false names. On or about May 24, 2017, KIM rented a mail box from Granite Bay Postal, in
22  Granite Bay, California, for a three-month term using a fraudulent Republic of Korea passport in the name of Person 5. The day after renting the mail box, on or about May 25, 2017, KIM opened a
23  checking account with $100 at a branch of El Dorado Savings Bank in Folsom, California, in the name of Person 5. KIM used a social security card belonging to Person 5, which Kyung Min Kong had
24  purchased for $600, together with the altered Republic of Korea passport that bore Person 5's name, to open the El Dorado Savings Bank account in Granite Bay, using the rented Granite Bay mail box
25  address. Out of the El Dorado Savings Bank checking account, approximately 67 checks were presented for payment against the checking account in amounts between $992 and $2,998 for a total of $131,796.
26  All of the checks eventually returned unpaid, as there was only approximately $100 in the checking account to cover the checks.

27      KIM's bust-out activity resulted in an actual loss of $196,058.27 to the banks, and an intended
28  loss of $380,429.06 based on additional, unsuccessful bust-out attempts.

PLEA AGREEMENT                    A-1